# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| Emma L. Hickel, | ) |
|     Plaintiff, | ) 3:17-CV-00255 JWS |
| vs. | ) ORDER AND OPINION |
| | ) [Re: Motion at Docket 7] |
| State Farm Mutual Automobile Insurance Company, | ) |
|     Defendant. | ) |

## I. MOTION PRESENTED

At docket 7 Defendant State Farm Mutual Automobile Insurance Company ("State Farm") moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment on all claims brought by Plaintiff Emma L. Hickel ("Hickel"). State Farm supports the motion with a memorandum of points and authorities at docket 8 and a declaration at docket 9. Hickel opposes the motion at docket 21 and submits affidavits in support of the opposition at dockets 22 and 23. State Farm replies at docket 25. This Court previously denied Hickel's request for oral argument,[1] and has again determined that oral argument would not assist the court.

## II. BACKGROUND

On March 6, 2012, Hickel, then a minor, was a passenger in a 2005 Ford Expedition that had stopped behind a school bus on eastbound Dimond Boulevard when it

---

[1]Doc. 30.

was rear ended by a 1995 Ford Bronco.[2] The 2005 Ford Expedition was insured under State Farm Auto Policy Number 066 2701-F15-02 (the "State Farm insurance policy").[3]

After she noticed pain in her lower back, Hickel received therapeutic care from Alaska Chiropractic Arts through June 2012, the cost of which was covered by State Farm as medical payments.[4] In December 2012, Hickel's symptoms worsened, and she consulted Advanced P.T. in January 2013.[5] An MRI was done in February 2013 and showed herniations in her lower back at L4-L5 and L5-S1.[6] In June 2013, Hickel began oral steroid treatment, but the pain eventually returned.[7]

Hickel retained an attorney and notified State Farm of her injuries on August 9, 2013.[8] On May 30, 2014, Hickel filed in the Alaska Superior Court a negligence complaint against the driver of the 1995 Ford Bronco, Abigale Kane, Case No. 3AN-14-7174 CI.[9] Kane agreed to settle Hickel's claim for the $100,000 liability coverage limit of her American Family Mutual Insurance Company insurance policy,[10] and, on December 4, 2014, Hickel informed State Farm of the underlying settlement and her intent to make an underinsured motorist ("UIM") claim under the State Farm insurance policy.[11] On

---

[2] Doc. 1-1 at 3 ¶ 5; Doc. 7-2 at 1; Doc. 7-4 ¶ 1; Doc. 22 at 1-2 ¶ 1.

[3] Doc. 7-6.

[4] Doc. 1-1 at 3 ¶ 6; Doc. 22 at 1-2 ¶ 1.

[5] Doc. 22 at 2-3 ¶¶ 3-4.

[6] *Id.* at 3 ¶ 4.

[7] *Id.*

[8] *Id.* at 3 ¶ 5.

[9] Doc. 7-3.

[10] Doc. 7-5; Doc. 7-4 ¶ 1.

[11] Doc. 7-8.

December 16, 2014, Hickel executed a Release of All Claims as to Kane.[12] By that time, Hickel had undergone one lumbar spinal surgery.[13]

On February 10, 2015, Hickel sent State Farm documentation about the accident and her medical bills, and requested that State Farm pay her the State Farm Insurance policy's UIM limits of $50,000, plus prejudgment interest and Rule 82 attorney's fees.[14] The demand letter stated that Hickel would "move forward with a lawsuit in superior court" if State Farm did not pay the request by February 27, 2015.[15] On the deadline date, State Farm made a settlement offer of $5,000.[16] State Farm reiterated its $5,000 offer by letter dated April 30, 2015,[17] and increased the offer to $10,000 by letter dated May 8, 2015.[18]

On September 25, 2015, Hickel's counsel faxed State Farm a letter "demand[ing] payment of the $10,000 UIM BI benefits as the undisputed portion of this claim."[19] The letter stated that "State Farm's payment of the $10,000 in undisputed UIM BI benefits shall be made without prejudice to Ms. Hickel's continued right to demand payment of the remaining UIM BI policy limits."[20] By letter also dated September 30, 2015, State Farm paid Hickel $10,000, stating that the parties "ha[d] reached an impasse."[21] On January 13,

---

[12] Doc. 7-5.

[13] Doc. 22 at 4 ¶ 8.

[14] Doc. 7-9.

[15] *Id.*

[16] Doc. 21-4 at 5.

[17] *Id.* at 6.

[18] *Id.* at 7.

[19] *Id.* at 8.

[20] *Id.*

[21] Doc. 7-11.

2016, State Farm sent Hickel's counsel a letter stating, "We extended a settlement to your client on May 8, 2015, for $10,000 and have yet to get a response from you."[22]

From her first surgery in November 2014 through the summer of 2017, Hickel "play[ed] the waiting game to see how successful the first surgery would turn out to be" and decided that she would not file suit against State Farm unless another surgery was necessary.[23] In August 2017, another MRI showed that additional surgery was necessary.[24] On August 27, 2017, more than 19 months after the last letter from State Farm, counsel for Hickel "reiterated Ms. Hickel's demand for payment of the UIM policy limits due to ongoing complications," and requested "an updated written acknowledgment of [the] claims and the current contact information for the adjuster assigned to [the] UIM BI claim."[25] About a week later, State Farm, through a different claims specialist, confirmed receipt of the demand but stated that State Farm was "unable to accept or reject [the] demand because medical bills and records were not provided related to the ongoing complications . . . described."[26]

On October 26, 2017, counsel for State Farm sent Hickel's counsel a letter reflecting State Farm's belief that Hickel's claim for UIM benefits was time-barred pursuant to the terms of the State Farm insurance policy.[27] Hickel filed the instant suit in Anchorage

---

[22] Doc. 21-4 at 11. In her opposition, Hickel describes the January 13, 2016 letter as "extend[ing] an additional $10,000 UIM settlement." Doc. 21 at 7. It appears, however, that the letter merely described the $10,000 payment previously made on May 8, 2015. Neither party contends that State Farm offered $20,000 in total settlement.

[23] Doc. 22 at 4 ¶ 8-9.

[24] *Id.* ¶ 12.

[25] Doc. 21-4 at 12.

[26] *Id.* at 13.

[27] *Id.* at 14.

-4-

Superior Court eleven days later, on November 6, 2017.[28] In her complaint, Hickel alleged that "Defendant's refusal to provide contract benefits and reasonable claim handling service to Plaintiff is in violation of the insurance contract, the covenant of good faith and fair dealing, and Alaska's insurance laws."[29] State Farm removed the case to the district court on the basis of 28 U.S.C. §§ 1332 and 1441.[30] State Farm now moves for summary judgment on all claims as time-barred by the State Farm insurance policy and/or the applicable statute of limitations.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[32] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[33] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[34]

---

[28] Doc. 1-1.

[29] *Id.* at 2 ¶ 11.

[30] Doc. 1.

[31] Fed. R. Civ. P. 56(a).

[32] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[33] *Id.*

[34] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

| | |
|---|---|
| 1 | The moving party has the burden of showing that there is no genuine dispute as to |
| 2 | any material fact.[35] Where the nonmoving party will bear the burden of proof at trial on a |
| 3 | dispositive issue, the moving party need not present evidence to show that summary |
| 4 | judgment is warranted; it need only point out the lack of any genuine dispute as to material |
| 5 | fact.[36] Once the moving party has met this burden, the nonmoving party must set forth |
| 6 | evidence of specific facts showing the existence of a genuine issue for trial.[37] All evidence |
| 7 | presented by the non-movant must be believed for purposes of summary judgment, and all |
| 8 | justifiable inferences must be drawn in favor of the non-movant.[38] However, the |
| 9 | non-moving party may not rest upon mere allegations or denials, but must show that there |
| 10 | is sufficient evidence supporting the claimed factual dispute to require a fact-finder to |
| 11 | resolve the parties' differing versions of the truth at trial.[39] |

## IV. DISCUSSION

**A.     Applicable Statute of Limitations/Enforceability of Contractual Limitation**

State Farm argues that a two-year statute of limitations or contractual time period applies to Hickel's action to recover UIM benefits under the State Farm insurance policy. First, State Farm contends that Alaska's two-year statute of limitations for tort claims involving personal injuries, AS 09.10.070, applies here rather than the three-year statute of limitations for contract actions, AS 09.10.053.[40] Alternatively, State Farm avers that the contractual limitation provision in the State Farm insurance policy, which requires that a claimant seeking UIM benefits file suit against State Farm "[w]ithin two years immediately

---

[35] *Id.* at 323.

[36] *Id.* at 323-25.

[37] *Anderson,* 477 U.S. at 248-49.

[38] *Id.* at 255.

[39] *Id.* at 248-49.

[40] Doc. 8 at 5-11.

following the date of the accident,"[41] is enforceable against Hickel.[42] Ultimately, however, the Court does not need to determine which statute of limitations applies or whether the contractual limitation is enforceable because, as discussed below, whether Hickel's claims are time-barred turns on when Hickel's claims accrued.

**B.  Accrual Date**

State Farm argues that Hickel's claims accrued, and the statute of limitations began to run, on March 6, 2012, the date of the accident, because Hickel's suit sounds in tort and the State Farm insurance policy's contractual limitation requires a claimant to file suit within two years of the accident.[43] The Alaska Supreme Court, however, "ha[s] held that an insured's cause of action against her insurer generally accrues, and the statute of limitations begins to run, 'at the time of the breach of the agreement,' therefore '[a] cause of action for denial of coverage under an insurance policy accrues when coverage is disclaimed and the insured is notified.'"[44] Although it has not specifically addressed when a UIM claim accrues, the Alaska Supreme Court held in *McDonnell* that, with respect to uninsured motorist ("UM") claims, "the limitations period is triggered by an alleged breach of the insurance contract."[45] Likewise, the Alaska Supreme Court held in the same case that a policy's provision shortening the applicable statute of limitations may be enforceable, but the policy cannot modify the accrual date of the claim from the date of the alleged breach of contract to the date of the accident.[46]

---

[41] Doc. 7-7 at 3.

[42] Doc. 8 at 11-14.

[43] Doc. 8 at 7-11.

[44] *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 726-27 (Alaska 2013) (quoting *Brannon v. Continental Cas. Co.*, 137 P.3d 280, 284 (Alaska 2006)).

[45] *Id.* at 728 (Alaska 2013).

[46] *Id.* at 733.

According to State Farm, the Alaska Supreme Court would have decided *McDonnell* differently had it been confronted with a suit for UIM, rather than UM, benefits.[47] But the reasoning for the Supreme Court's decision in *McDonnell* applies equally in the context of UIM claims. As with UM claims, "an alleged breach of contract accrual date is more consistent with Alaska case law, the contractual nature of [UIM] claims, and a majority of jurisdictions."[48] Moreover, State Farm's argument ignores the fact that no justiciable controversy existed under the State Farm insurance policy until a breach of that policy actually occurred, and Hickel did not know at the time of the accident whether the extent of her injuries and the limits of the tortfeasor's policy qualified her for UIM coverage.[49] Accordingly, Hickel's claim accrued, and the relevant statute of limitations or policy time period began to run on the date that State Farm breached the insurance policy.

Under Alaska law, "it is not necessary for an insurer to disclaim all coverage or liability in order to trigger the statute of limitations—a clear refusal to pay under the contract may be sufficient to constitute an alleged breach of the contract."[50] State Farm contends that the latest possible date of the alleged breach was September 30, 2015, when State

---

[47] Doc. 8 at 5, 12.

[48] *McDonnell*, 299 P.3d at 728; *see also Vega v. Farmers Ins. Co.*, 918 P.2d 95, 97-98 (Or. 1996) (noting that, by holding that the statute of limitations begins to run when the insurer breaches the contract by denying a claim for UIM benefits, not when the accident occurs, it had joined the majority of states that have considered the issue).

[49] State Farm argues in passing that the Alaska Supreme Court may conclude that the statute of limitations began running on Hickel's UIM claim on December 16, 2014, when she settled the underlying claim against Kane and knew of her potential UIM claim. Doc. 8 at 12. In some jurisdictions, UIM claims accrue when the claimant receives payment of settlement or judgment on the underlying bodily injury liability claim, but State Farm provides no persuasive reason to believe that the Alaska Supreme Court would so hold in light of the existing case law on insurance recovery claims and the absence of statutory authority.

[50] *McDonnell*, 299 P.3d at 727-28.

Farm paid Hickel $10,000, the undisputed portion of Hickel's claim.[51] Examining State Farm's accompanying letter in isolation provides some indicia of a clear refusal to pay because the letter notes that the parties had "reached an impasse."[52]

However, the payment was made in response to Hickel's demand for the "undisputed portion of the claim," in which counsel reserved "Ms. Hickel's continued right to demand payment of the remaining UIM BI policy limits."[53] Likewise, State Farm's September 30, 2015 letter states that the $10,000 payment "constitutes our initial offer" and that:

> The remaining coverage available will be reduced by the enclosed advanced payment. This payment will also be credited against any final determination of damages.
>
> This payment should be considered an advance without prejudicing your client's right to receive a higher amount in the future through continued negotiations.
>
> We will continue to evaluate any and all new information you may have that could affect our evaluation.
>
> Should you wish to mediate or arbitrate this claim, please contact us and we will arrange a time and place convenient to all parties.[54]

Hickel has also submitted later correspondence from State Farm, including a January 13, 2016 letter asking for a response to its $10,000 settlement,[55] and a September 5, 2017 letter confirming receipt of Hickel's August 28, 2017, demand for policy limits due to ongoing complications and requesting supporting documentation.[56] According to Hickel, it was not until State Farm's legal counsel issued the October 26, 2017 letter reflecting State Farm's belief that Hickel's UIM claim was time-barred that

---

[51] Doc. 25 at 6.

[52] Doc. 21-4 at 9.

[53] *Id.* at 8.

[54] *Id.* at 9.

[55] *Id.* at 11.

[56] *Id.* at 13.

State Farm communicated a clear refusal to pay the entirety of Hickel's claim in breach of the insurance policy.[57]

In the context of a motion for summary judgment, the Court must draw all inferences in the light most favorable to the nonmoving party.[58] Further, the Court may not make credibility determinations or weigh conflicting evidence.[59] Applying these rules to this case, the Court determines that a genuine issue of material fact exists as to when State Farm allegedly breached the contract and Hickel's claim for UIM benefits accrued.[60] State Farm does not establish an absence of factual dispute regarding when Hickel knew or reasonably should have known about State Farm's breach and bad faith actions. In the light most favorable to Hickel, a reasonable factfinder could conclude that the alleged breach did not occur until October 26, 2017, a mere eleven days before Hickel filed suit, when counsel for State Farm advised Hickel of State Farm's belief that her UIM claim was time-barred. Thus, State Farm has failed to establish that Hickel's action is untimely as a matter of law, and the motion for summary judgment must be denied.

---

[57] Doc. 21 at 31.

[58] *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

[59] *Id.*

[60] *See McDonnell*, 299 F.3d at 728 (noting that parties' disagreement over when the contract was allegedly breached and the statute of limitations began to run is a factual issue to be resolved by the factfinder).

## V. CONCLUSION

For the reasons above, the motion for summary judgment at docket 7 is **DENIED**.

DATED this 31st day of August 2018.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT